UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAMIEN M. JACKSON,            )
                              )
        Petitioner,           )
                              )
v.                            )        No. 3:05-0629
                              )        Judge Campbell
WARDEN WAYNE BRANDON,         )
                              )
        Respondent.           )

## MEMORANDUM

### INTRODUCTION

The petitioner, Damien M. Jackson, is a prisoner in the Turney Center Industrial Prison and Farm ("Turney Center") in Only, Tennessee. He brings this action under 28 U.S.C. § 2254, naming Wayne Brandon, Warden at Turney Center, as the respondent.

### BACKGROUND

A jury convicted Jackson on two counts of second-degree murder and two counts of attempted second-degree murder. (Docket Entry No. 1, ¶¶ 4, 6, p. 1) The convictions for the two counts of second-degree murder were merged. (Docket Entry No. 19, Add. 11, p. 121)[1] Judgment was entered against Jackson on September 22, 1999. (Docket Entry No. 19, Add. 11, pp. 120-123) He was sentenced as a Range I offender to twenty-five years for second-degree murder, and to twelve years each on the attempted second-degree murder charges, for an effective sentence of forty-nine years. (Docket Entry No. 19, Add. 11, pp. 124-130)

Jackson filed a notice of appeal on March 22, 2000. (Docket Entry No. 19, Add. 11, p. 135) He raised the following four issues on direct appeal: 1) the trial court erred in denying his motion to suppress the statements that he made to the police; 2) the trial court erred in not ordering the State

---

[1] The page numbers referred to in Addendum 11 are to the "Bates" stamp numbers appearing at the bottom of electronically filed document.

to disclose the identity of the confidential informant; 3) the evidence was insufficient to support the separate verdicts; and 4) the trial court erred in imposing the maximum sentences and in ordering that the sentences be served consecutively. (Docket Entry No. 12, Add. 2, p. 483) The Tennessee Court of Criminal Appeals ("the Court of Criminal Appeals") affirmed the judgment of the trial court on July 18, 2001 (Docket Entry No. 12, Add. 3), and the Tennessee Supreme Court denied his application for permission to appeal on December 10, 2001 (Docket Entry No. 12, Add. 5). Jackson did not file a petition for a writ of *certiorari* in the United States Supreme Court.

Jackson filed a petition for state post-conviction relief on January 29, 2002, and two amended petitions thereafter. (Docket Entry No. 19, Add. 12, pp. 1-7, 25-29, 33-56) His request for post-conviction relief was denied on March 13, 2003 following an evidentiary hearing. (Docket Entry No. 19, Add. 20, p. 651) Jackson raised the following issues on appeal from the judgment of the post-conviction court: 1) the post-conviction court erred by not ruling on all of his post-conviction claims; 2) the post-conviction court erred in dismissing his claim that defense counsel rendered ineffective assistance by pursuing a "lesser-included-offense" strategy at trial rather than a "not-guilty" strategy; and 3) defense counsel were ineffective for not rebutting evidence used to enhance his sentence. (Docket Entry No. 12, Add. 7, p. 649) The Court of Criminal Appeals affirmed the judgment of the post-conviction court on June 25, 2004 (Docket Entry No. 12, Add. 8) following which the Tennessee Supreme Court denied Jackson's application for permission to appeal on November 29, 2004. (Docket Entry No. 12, Add. 10). Once again, Jackson did not file a petition for a writ of *certiorari* in the United States Supreme Court.

Jackson filed his petition for federal *habeas corpus* relief on July 11, 2005.[2] On August 10,

---

[2] The envelope in which Jackson mailed his petition to the district court is stamped as having been delivered to the Turney Center mailroom on July 11, 2005. This is the date that Jackson is deemed to have filed this action. Rule 3(d), Rules – Section 2254 Cases.

2

2005, he filed a consolidated motion for appointment of counsel and permission to amend should an amendment be necessary. (Docket Entry No. 3)

The respondent filed his Answer on October 14, 2005. (Docket Entry No. 9) On October 18, 2005, Jackson filed a motion requesting a thirty-day extension of time to file a reply to the State's response. (Docket Entry No. 11) When the thirty days passed and Jackson had not filed a reply, he was given a further extension of time until November 30, 2005 to do so. (Docket Entry No. 16) On November 18, 2005, Jackson filed an amended petition and brief rather than the anticipated "reply." (Docket Entry No. 17-18) For reasons explained, *infra* at pp. 19-20, the Court construes Docket Entry No. 17 and 18 as Jackson's "reply" to the respondent's response.

## ANALYSIS

Title 28 U.S.C. § 2254(d) provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal habeas corpus court may grant relief if the state court identifies the governing legal principle from this

3

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by this Court on a question of law or . . . decides a case differently than this Court has on a set of materially indistinguishable facts." *Id*. at 364-65. Further, where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the *habeas corpus* petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Finally, under the Anti-Terrorism and Effective Death Penalty Act of 1996, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

        Jackson sets forth the following grounds for relief in his petition for a writ of *habeas corpus*:

1. He was denied his Fifth Amendment right to remain silent (Docket Entry No. 2, p. 14);

2. He was denied his Sixth Amendment right to counsel prior to questioning (Docket Entry No. 2, p. 15);

3. His statements to the police were not given voluntarily (Docket Entry No. 2, p. 16);

4. Counsel and co-counsel ("defense counsel") denied him his right to testify at trial (Docket Entry No. 2, p. 17);

5. Defense counsel denied him his right to call witnesses (Docket Entry No. 2, p. 18);

6. Prosecution and defense counsel withheld exculpatory evidence (Docket Entry No. 2, p. 19);

7. Defense counsel deprived him of a meaningful defense by not: a) complying with his request to

4

pursue a "not-guilty" defense, deciding instead to pursue a "lesser-included-offense" defense, b) calling witnesses that he felt should have been called, c) permitting him to testify (Docket Entry No. 2, p. 20);

8. Defense counsel were ineffective at trial because they: a) did not call any witnesses, b) did not conduct a reasonable independent investigation, c) would not permit him to testify, d) refused to present a "not-guilty" defense, e) did not defend against a "false rights waiver," f) did not defend against the inconsistent statements made by state witnesses, g) did not keep Jackson informed on the case, h) were disloyal for not "recognizing" his "desires to exercise certain unspecified guaranteed rights," i) did not disclose important evidence until after his trial and conviction, j) violated his right against self-incrimination by not pursuing a "not-guilty" defense (Docket Entry No. 2, p. 21);

9. The evidence was insufficient to support his convictions for second-degree murder beyond a reasonable doubt because: a) the testimony of police officers was inconsistent, b) the State offered no proof as to his state of mind, c) the trial court gave erroneous jury instructions thereby preventing the jury to determine the sufficiency of the evidence (Docket Entry No. 2, p. 22);

10. He was denied a fair sentencing hearing because: a) no witnesses were called on his behalf, b) defense counsel failed to present meaningful mitigating evidence, c) he was not permitted to testify, d) the trial court and the State misconstrued the record in order to apply enhancing factors, e) he was sentenced to the maximum sentence even though he was a first-time offender, f) defense counsel did not conduct a reasonable investigation (Docket Entry No. 2, p. 23);

11. He was denied his right to due process and to a fair trial (Docket Entry No. 2, p. 24).

Procedural Default

The respondent argues that the following grounds for relief, corresponding to the numbered paragraphs above, were not raised in state court prior to being raised in the instant action and, as such, they are procedurally defaulted: ¶ 2 – denial of his Sixth Amendment right to counsel prior to questioning (Docket Entry No. 9, ¶ 22, p. 6); ¶ 4 – denial of his right to testify (Docket Entry No. 9; ¶ 24, p. 7); ¶ 5 – denial of his right to call witnesses (Docket Entry No. 9, ¶ 25, p. 7); ¶ 6 prosecution and defense counsel withholding exculpatory evidence (Docket Entry No. 9, ¶ 26, pp. 7-8); ¶ 7 – denial of his right to a meaningful defense by not calling witnesses and by not permitting him to testify (Docket Entry No. 9, ¶¶ 27-28, pp. 8-9); ¶ 8 – denial of effective assistance of counsel during the trial phase of the proceedings on all grounds raised (Docket Entry No. 9, ¶ 28, pp. 8-9); ¶¶ 10(d)-(e) – denial of a fair sentencing hearing owing to trial court error (Docket Entry No. 9, ¶ 30, p. 10); ¶ 10(d) – denial of a fair sentencing hearing owing to prosecution misconduct (Docket Entry No. 9, ¶ 31, p. 11); ¶ 10(f) – denial of a fair sentencing hearing owing to defense counsels' failure to investigate (Docket Entry No. 9, ¶ 28, pp. 8-9); ¶ 11 – denial of his due process rights and his right to a fair trial (Docket Entry No. 9, ¶ 32, p. 11).

Federal courts may only consider on *habeas* review those claims that a petitioner has first raised before the state courts. *See* 28 U.S.C. § 2254(b); *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001). For a claim to be considered exhausted, "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)(citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998)("the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.")). A review of the record shows that the claims enumerated above were not raised in state court prior to being raised in these proceedings.

Therefore, these claims are unexhausted.

Exhaustion is not a jurisdictional requirement. However, exhaustion is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass on and correct alleged violations of a prisoner's federal rights. *Granberry v. Greer*, 481 U.S. 129, 133 (1987). Claims not first raised in state court are unexhausted and are ordinarily dismissed without prejudice, in order to permit the petitioner the opportunity to pursue them in state court. *Rose v. Lundy*, 455 U .S. 509, 518, 520-22 (1982). However, if an unexhausted claim would be procedurally defaulted under state law, that claim generally is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). The question is whether these claims are procedurally defaulted under Tennessee law.

Tennessee's post-conviction statute, Tenn. Code Ann. § 40-30-102, provides that:

> Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise.

*Id*. at § (a). The Tennessee post-conviction statute goes on to say that:

> This part contemplates the filing of only one (1) petition for post-conviction relief. In no event may

7

> more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed. A petitioner may move to reopen a post-conviction proceeding that has been concluded, under the limited circumstances set out in § 40-30-117.

*Id*. at § (c). The limited circumstances in Tenn. Code Ann. ¶ 40-30-117 are that:

> (1) "The claim in the motion is based on a final ruling of an appellate court establishing a constitutional claim that was not recognized as existing at the time of trial. . . ."
>
> (2) "The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent . . . ."
>
> (3) "The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid . . . ."
>
> (4) "It appears the facts underlying the claim, if true, would establish by clear and convincing evidence that Jackson is entitled to have the conviction set aside or the sentence reduced."

*Id.* at §§ (a)(1)-(a)(4).

It is clear from the record that more than one year has passed since the judgment became final in the criminal action against Jackson, and that Jackson already has filed one petition seeking state post-conviction relief. Therefore, he may not file another petition. Moreover, unless one of the limited circumstances above pertains, he may not reopen his previous post-conviction proceedings. There is nothing in the record before the Court that supports the conclusion that any

8

of the four limited circumstances cited above applies in Jackson's case. Consequently, Jackson may not reopen his earlier post-conviction proceedings.

For reasons explained above, the claims that are the subject of this part of the analysis are procedurally defaulted under state law. The next question is whether these claims are procedurally defaulted for purposes of federal *habeas corpus* review as well.

For the district court to consider a claim that is procedurally defaulted under state law, a petitioner must demonstrate cause and prejudice for the failure to exhaust, or that a fundamental miscarriage of justice will result if the claim is not reviewed. *Wainwright*, 433 U.S. at 87, 90-91; *Seymour*, 224 F.3d at 550. In this context, a fundamental miscarriage of justice means actual innocence. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). To receive consideration for claims that are procedurally defaulted, petitioners are required to satisfy both halves of the "cause-and-prejudice" test, or demonstrate that failure to consider the claim(s) will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 722. *Pro se* litigants are not excused from the "cause-and-prejudice" standard. *Lewis v. United States*, No. 96-3092, 1997 WestLaw 49028, * 8 (6th Cir. (Ohio)(citing *Haley v. United States*, 78 F.3d 282, 285 (7th Cir. 1996)(*per curiam*); *McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995); *George v. Perrill*, 62 F.3d 333, 335 (10th Cir. 1995)).

In his reply, Jackson does not address procedural default in the context of actual innocence. He does, however, address procedural default very generally in the context of cause and prejudice. (Docket Entry No. 18, ¶¶ 166-168, 232-236, pp. 60-61, 85-86) Specifically, Jackson argues that the "cause" for any procedural default was due to attorney error.

Before "cause" can be fairly attributable to ineffective assistance of counsel, the ineffective assistance of counsel claim must itself have been exhausted in the state courts. *Edwards v.*

9

*Carpenter*, 529 U.S. 446, 451-53 (2000); *Lancaster v. Adams*, 324 F.3d 423, 437-38 (6th Cir. 2003); *Clifford v. Chandler*, 333 F.3d 724, 729 (6th Cir. 2003); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001), *cert. denied*, 534 U.S. 977 (2001) and 534 U.S. 1012 (2002). In other words, before Jackson may assert that "cause" to excuse procedural default was due to ineffective assistance of counsel, Jackson must first have exhausted the claim that counsel was ineffective for not raising those grounds for relief determined to have been procedurally defaulted under state law.

A careful review of the record shows that Jackson never raised an ineffective assistance of counsel claim with respect to any of those grounds for relief deemed above to have been procedurally defaulted under state law. Because Jackson has failed to satisfy the "cause" half of the two-part "cause-and-prejudice" test, it is unnecessary to address the question of prejudice. As Jackson has failed to satisfy the two-part "cause-and-prejudice" test, those claims identified above as procedurally defaulted under state law are procedurally defaulted for purposes of federal *habeas corpus* review as well.

Petitioner's Remaining Claims

*Petitioner's Right-to-Remain-Silent Claim*

Jackson argues that his Fifth Amendment right to remain silent was violated because he had not been advised of his rights under *Miranda* when he made incriminating statements while en route to the police station and those that he made during subsequent questioning at the police station. (Docket Entry No. 2, p. 14) The respondent argues that the Court of Criminal Appeals identified and applied the proper legal standard, and that the decision of the Court of Criminal Appeals regarding these two claims was neither contrary to nor an unreasonable application of clearly established federal law. (Docket Entry No. 9, pp. 5-6)

On direct appeal, Jackson argued that: 1) the statements he made while he was en route to

10

the police station should have been suppressed because he was in custody at the time (Docket Entry No. 12, Add. 2, pp. 506); 2) the statements that he made after he had been advised of his rights under *Miranda* should have been suppressed as the "fruit" of those allegedly illegal claims obtained earlier (Docket Entry No. 12, Add. 2, pp. 509-512); and 3) all of his statements should have been suppressed because they were not voluntarily, knowingly, and intelligently given (Docket Entry No. 12, Add. 2, pp. 512-515).

The law is well settled that "incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised" of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* warnings are required where a suspect is "in custody," which occurs when "there has been a 'formal arrest or restraint on freedom of movement.'" *Mason v. Mitchell,* 320 F.3d 604, 631 (6th Cir.2003)(quoting *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977)). A reviewing court determines whether or not a defendant is in custody by considering "the objective circumstances of the interrogation" rather than "the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* (quoting *Stansbury v. California,* 511 U.S. 318, 323 (1994)). Instead of focusing on where the questioning occurred, or if the individual is a suspect, the determination must be concerned with "how a reasonable man in the suspect's position would have understood his situation." *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984)). The record shows that the Court of Criminal Appeals correctly identified *Miranda* as controlling on the issue of whether Jackson was in custody at the time in question. (Docket Entry No. 12, Add. 3, pp. 545-546) The record also shows that, in addressing this issue, the Court of Criminal Appeals made its determination based on the totality of the circumstances. (Docket Entry No. 12, Add. 3, p. 547) Specifically, the Court of Criminal Appeals noted that Jackson had been told he was not under arrest, that he sat in the front seat with the officer to whom he made the

11

statements, that he was not handcuffed or restrained in any way, that there were no officers other than the driver in the car, and that there was a good rapport between the officer and Jackson apparent in the later videotaped statement. (Docket Entry No. 12, Add. 2, pp. 546-547) From the foregoing, the Court of Criminal Appeals concluded that a reasonable person in Jackson's situation would not have considered himself in custody and, as such, there was no constitutional violation. As discussed *infra* at pp. 12-14, the Court of Criminal Appeals also determined that the subsequent incriminating statements made by Jackson at the police station were knowingly and voluntarily given and, as such, there was no constitutional violation with respect to those statements.

The record supports the conclusion that the Court of Criminal Appeals' ruling on this issue was not an unreasonable determination of the facts in view of the evidence and that its determination is entitled to the presumption of correctness. Moreover, Jackson has not established by clear and convincing evidence that the Court of Criminal Appeals' determination is not entitled to the presumption of correctness. (Docket Entry No. 12, p. 14; Docket Entry No. 18, pp. 2-13) Furthermore, it is apparent from the record that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of clearly established federal law. For these reasons, this claim is without merit.

*Petitioner's Claim That His Statements Were Involuntary*

Jackson asserts that none of the statements that he made to the police were voluntary, *i.e.*, he claims that they were coerced and that they were admitted into evidence in violation of his due process rights. (Docket Entry No. 2, p. 16) The respondent argues that the Court of Criminal Appeals identified and applied the proper legal standard and that the decision of the Court of Criminal Appeals regarding these two claims was neither contrary to nor an unreasonable application of clearly established federal law. (Docket Entry No. 9, pp. 5-6)

12

The due process clause of the Fourteenth Amendment prohibits the admission of coerced confessions procured by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton,* 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Beckwith v. United States,* 425 U.S. 341, 347-348 (1976)(quoting *Rogers v. Richmond,* 365 U.S. 534, 544 (1961)). An involuntary confession may result from psychological, no less than physical, coercion by law enforcement officials. *Arizona v. Fulminante,* 499 U.S. 279, 285-289 (1991); *Miranda*, 384 U.S. at 448. However, not all psychological tactics are unconstitutional. In determining whether a confession has been elicited by means that are unconstitutional, courts look to the totality of the circumstances concerning "whether a defendant's will was overborne in a particular case." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused was informed of his constitutional rights; the length of the questioning; whether the questioning was repeated and prolonged in nature; and whether physical punishment was used, such as the deprivation of food or sleep. *Id*.

The record shows that the Court of Criminal Appeals correctly identified *Rogers v. Richmond* as controlling on the issue of coerced confessions. (Docket Entry No. 12, Add. 3, pp. 545-546) The record also shows that, in addressing this issue, the Court of Criminal Appeals determined that: 1) the waiver of rights form was read to Jackson when he arrived at the police station; 2) Jackson understood the implications of the waiver; 3) Jackson waived his rights; 4) no threats were made against Jackson; 5) no promises were made to Jackson; and 6) the interview was very calm. (Docket Entry No. 12, Add. 3, p. 548) From the totality of the evidence, the Court of Criminal Appeals determined that Jackson's statements were not coerced, but were knowingly and

13

voluntarily made. (Docket Entry No. 12, Add. 2, pp. 547-548)

The record supports the conclusion that Court of Criminal Appeals' ruling on this issue was not an unreasonable determination of the facts in view of the evidence and its determination is entitled to the presumption of correctness. Moreover, Jackson once again fails to establish by clear and convincing evidence that the Court of Criminal Appeals' determination regarding this issue is not entitled to the presumption of correctness. (Docket Entry No. 2, p. 20; Docket Entry No. 18, pp. 58-67) Here too the record supports the conclusion that the Court of Criminal Appeals' determination on this issue was neither contrary to nor an unreasonable application of clearly established federal law. For these reasons, this claim is without merit.

*Petitioner's Claim That He Was
Denied a Meaningful Defense*

Jackson argues that he was denied a meaningful defense because defense counsel disregarded his request to pursue a "not-guilty" defense, allegedly choosing instead to pursue a "lesser-included-offense" defense. (Docket Entry No. 2, p. 20) Although not stated as such, the Court liberally construes this claim to constitute a claim of ineffective assistance of counsel.[3] The respondent argues that the Court of Criminal Appeals decision regarding this claim is neither contrary to nor an unreasonable application of existing federal law. (Docket Entry No. 9, p. 8)

Under *Strickland v. Washington*, 466 U.S. 668 (1984), two elements comprise a claim of ineffective assistance of counsel: 1) the attorney's performance was deficient, falling below an objective standard of reasonableness; and 2) the attorney's deficient performance prejudiced the

---

[3] Jackson raised this issue on appeal from the judgment of the post-conviction court in the context of error on the part of the post-conviction court. (Docket Entry No. 12, Add. 7, pp. 656-657) However, the relief sought was for the Court of Criminal Appeals to "reverse the finding of the Court below and find that he was denied effective assistance of counsel . . . ." (Docket Entry No. 12, Add. 7, p. 658) Although the Court of Criminal Appeals acknowledged that the claim at issue was raised in terms of error on the part of the post-conviction court (Docket Entry No. 12, Add. 8, p. 662), it nevertheless applied the *Strickland* doctrine in it's analysis of the claim. For these reasons, the Court concludes that this claim has been exhausted.

14

defendant. *Id*. at 687. In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. *Id*. at 689. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

The transcript at the post-conviction hearing shows that defense counsel Karl Dean and Dawn Deaner testified that, although Jackson insisted on a "not-guilty" defense in the beginning, after being confronted with the evidence over time, he agreed approximately a week prior to trial to permit his attorneys to pursue the "lesser-included-offense" defense. (Docket Entry No. 12, Add. 6, pp. 607-609, 612-613, 625-627, 637) Defense counsel also testified that, had Jackson insisted on pursuing the "not-guilty" defense, they were prepared to go to trial with that strategy. For his part, Jackson testified that defense counsel did discuss defense strategy with him several times prior to trial, but that defense counsel pursued the "lesser-included-offense" strategy contrary to his instructions. (Docket Entry No. 12, Add. 6, pp. 581-583, 593, 596-597) The post-conviction court credited the testimony of defense counsel. (Docket Entry No. 12, Add. 8, p. 665)

On appeal from the judgment of the post-conviction court, the Court of Criminal Appeals determined that: 1) Jackson did, in fact, insist on pursuing a "not-guilty" strategy initially; 2) defense counsel convinced Jackson to agree to the "lesser-included-offense" strategy the week prior to trial; 3) Jackson agreed himself to forego testifying at trial; 4) the decision not to pursue a "not-guilty"

15

defense was a matter of trial strategy. (Docket Entry No. 12, Add. 8, p. 665) The Court of Criminal Appeals further concluded that the "lesser-included-offense" strategy "was adopted with the full agreement of the petitioner and was . . . without prejudice to the petitioner," and that the defense strategy "was a sound decision." (Docket Entry No. 12, Add. 8, p. 665) Although the Court of Criminal Appeals does not explain why the decision to pursue the "lesser-included-offense" defense was a "sound decision," the record shows that Jackson received a sentence of forty-nine years rather than the alternative – life imprisonment without the possibility of parole. (Docket Entry No. 12, Add. 6, p. 593)

Once again, a review of the record supports the conclusion that the Court of Criminal Appeals' ruling on this issue was not an unreasonable determination of the facts in view of the evidence and, as such, its ruling is entitled to the presumption of correctness. Jackson has not established by clear and convincing evidence that the Court of Criminal Appeals' determination is not entitled to the presumption of correctness. (Docket Entry No. 2, p. 20; Docket Entry No. 18, pp. 58-67) The record supports the further conclusion that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of clearly established federal law. For these reasons, this claim is without merit.

*Petitioner's Claim of Ineffective Assistance
of Counsel at Sentencing*

Jackson claims that defense counsel were ineffective at sentencing. (Docket Entry No. 2, p. 21) The respondent argues, in turn, that the decision of the Court of Criminal Appeals on this issue was neither contrary to nor an unreasonable application of existing federal law. (Docket Entry No. 9, pp. 8-9)

The standard for claims pertaining to ineffective assistance of counsel is as previously set forth, *supra* at pp. 14-15. The Court of Criminal Appeals identified the appropriate standard under

*Strickland* with respect to this issue. (Docket Entry No. 12, Add. 8, p. 664)

In his brief on appeal from the judgment of the post-conviction court, Jackson raised this issue in the context of his overarching claim that the post-conviction court erred by not ruling on all of his claims. (Docket Entry No. 12, Add. 7, p. 655) As an "example" of the post-conviction court's failure to address all of his claims, Jackson raised the specific issue of defense counsels' failure to rebut evidence used by the court to enhance his sentence at the sentencing hearing. (Docket Entry No. 12, Add. 7, p. 655)

In denying relief to Jackson on this claim, the Court of Criminal Appeals determined that Jackson failed to "produce any witness at the post-conviction hearing" that would support his allegation of ineffective assistance at sentencing. (Docket Entry No. 12, Add. 8, p. 665) A review of the transcript of the post-conviction hearing supports the Court of Criminal Appeals' determination. Specifically, attorney Dean testified only that he was not responsible for the sentencing phase of the trial. (Docket Entry No. 12, Add. 6, p. 611) Although attorney Deaner did testify about sentencing, her testimony emphasized the many strategic and tactical reasons why defense counsel approached sentencing as it did. A line-by-line analysis of the testimony adduced at the post-conviction hearing failed to reveal any competent proof in support of Jackson's claim that defense counsel were ineffective at sentencing.

In its opinion, the Court of Criminal Appeals did not address the constitutionality of defense counsels' representation at sentencing. Rather it merely determined that Jackson provided no proof in support of his claim. It is clear from the record that the Court of Criminal Appeals' determination on this issue was not an unreasonable determination of the facts in view of the evidence and, as such, its determination is entitled to the presumption of correctness. Jackson has not established by clear and convincing evidence, or otherwise, that the Court of Criminal Appeals' determination is not

17

entitled to the presumption of correctness. Consequently, this claim is without merit.

*Sufficiency of the Evidence*

Jackson asserts that the evidence was insufficient to support his conviction for second-degree murder. (Docket Entry No. 2, p. 24) The respondent argues that the Court of Criminal Appeals decision was neither contrary to nor an unreasonable application of existing federal law. (Docket Entry No. 9, p. 9)

On federal *habeas corpus* review, evidence is deemed sufficient to support a verdict if, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 (1979); *Zuern v. Tate,* 336 F.3d 478, 482 (6th Cir. 2003).

The record shows that the Court of Criminal Appeals correctly identified the proper governing legal standard regarding evidentiary challenges, *i.e.*, *Jackson v. Virginia*. (Docket Entry No. 12, Add. 3, p. 550) In its opinion, the Court of Criminal Appeals not only reviewed the evidence against Jackson, but did so within the context of the elements of the second-degree murder statute. Applying the evidence to the statute, the Court of Criminal Appeals determined that any rational juror would have concluded that Jackson committed the offenses of second-degree murder.

The record supports the conclusion that the Court of Criminal Appeals' determination of this issue was not an unreasonable determination of the facts in view of the evidence and, as such, its determination is entitled to the presumption of correctness. Jackson also has not established by clear and convincing evidence that the Court of Criminal Appeals' determination is not entitled to the presumption of correctness. (Docket Entry No. 2, p. 24; Docket Entry No. 18, pp. 68-75) Finally, the record supports the further conclusion that the Court of Criminal Appeals' determination of this issue was neither contrary to nor an unreasonable application of clearly established federal law. For

these reasons, this claim is without merit.

*Petitioner's Amended Petition*

As previously noted, *supra* at p. 3, Jackson filed an amended petition and brief on November 18, 2005 (Docket Entry No. 17-18) following his October 18, 2005 motion for an extension of time "to respond to [the] State's response" (Docket Entry No. 11).

Although a party may amend a pleading once as a matter of right if filed before a responsive pleading is served, a party may otherwise amend his pleading only by leave of the court or by written consent of the adverse party. Rule 15(a), Fed. R. Civ. P. Although leave shall be freely given when justice requires, *id.*; *Rose v. Hartford Underwriters Insurance Co.*, 203 F.3d 417, 420 (6th Cir. 2000), the ultimate decision to permit a petitioner to amend his petition rests with the sound discretion of the Court, *see Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1986).

It is clear from the record that Jackson filed his amended petition and brief nearly two months after the respondent filed his Answer. (Docket Entry No. 9, 12) The record also shows that Jackson has not obtained written permission from the respondent to amend his petition. Therefore, the Court liberally construes Docket Entry Nos. 17 and 18 as a request by Jackson for leave of the court to amend his petition.

Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility, *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001), *see Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose*, 203 F.3d at 420 (*citing Thiokol Corp. v. Dept.of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993).

Jackson's proposed amended petition and brief (Docket Entry No. 17-18) do not appear to

19

set forth any new claims. Rather, they merely offer expanded argument in support of those claims already set forth in his original petition and brief (Docket Entry No. 17-18). Moreover, there is nothing in the proposed amended petition and brief that would alter the outcome of the Court's analysis of the claims, *supra* at pp. 3-19. Because the proposed amended petition and brief cannot withstand a Rule 12(b)(6) motion to dismiss, they are futile and, therefore, subject to denial for futility.

Notwithstanding the futility of Jackson's proposed amended petition, the Court notes that Jackson has committed considerable time and effort in the preparation of Docket Entry Nos. 17 and 18, and that those documents add valuable insight into his arguments. Accordingly, the Court liberally construes Docket Entry Nos. 17 and 18 as Jackson's "reply" to the respondent's response and, as indicated previously.

## CONCLUSION

As reasoned herein, Jackson is not entitled to federal *habeas corpus* relief. Accordingly, Jackson's petition will be denied and this action will be dismissed. An appropriate Order will be entered.

Todd Campbell
United States District Judge